STATE of Missouri, Respondent,

v.

Mark NESLER, Appellant.

No. WD 51236.

Missouri Court of Appeals,
Western District.

May 28, 1996.

Barbara Fears, Columbia, for appellant.

David Mark Eblen, Columbia, for respondent.

Before LOWENSTEIN, P.J., and
HANNA and SPINDEN, JJ.

HANNA, Judge.

The defendant, Mark Nesler, was convicted, by the court, of two counts of harassment, § 565.090, RSMo 1994, one count of stalking, § 565.225.2, RSMo 1994, and one count of third degree assault, § 565.070, RSMo 1994. He was sentenced to the Boone County jail for nine months each on the harassment and assault counts, to be served concurrently with each other, and one year in the county jail on the stalking count, consecutive to the other counts. The court suspended execution of the stalking conviction and placed the defendant on probation for two years. The defendant appeals his conviction of assault and the judgment entered on the stalking count.

Because the defendant challenges the sufficiency of the evidence to convict him of assault, the facts are viewed in the light most favorable to the conviction. On January 5, 1995, the defendant met with Lisa Leonard, an employee of Together Dating Services

(Together Dating), to discuss becoming a member. Following this meeting, the defendant telephoned Leonard once at her office to tell her that he had romantic feelings for her, and several times at her home using abusive and profane language.

On January 21, 1995, the defendant talked to Chris Kolb, another employee of Together Dating, on the phone. The defendant told Kolb that he was going to kill Leonard and would be at Together Dating's office "in a minute" to kick Kolb's ass. Kolb called the police, and the defendant was arrested when he arrived at the Together Dating office. The defendant was wearing blue jeans, a black leather jacket, and a flannel shirt. Later that day, the defendant called Kolb asking him to drop the charges. That same day, someone other than the defendant called Kolb requesting that he drop the charges and told Kolb that he had better watch his back. The defendant posted bond and was released from the Boone County jail.

At about 7:30 that evening, as Kolb was putting his briefcase in his van, he was struck in the face, causing him to hit his head on the van door and fall to the ground. Kolb did not see the assailant's face, but did see a man with reddish hair running away. He described the assailant as wearing a black jacket, blue jeans, and a greenish camouflage hat.

■ The defendant claims that there was insufficient evidence to support the court's conviction of third degree assault. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable fact finder might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). This court does not weigh the evidence. *State v. Villa–Perez*, 835 S.W.2d 897, 900 (Mo. banc 1992). We must accept as true all evidence, whether direct or circumstantial, tending to prove the defendant's guilt. *State v. Dagley*, 793 S.W.2d 420, 423 (Mo.App.1990). We consider the evidence and all reasonable inferences in the light most favorable to the decision of the fact finder and disregard all

evidence to the contrary. *State v. LaFlamme*, 869 S.W.2d 183, 185 (Mo.App.1993).

■ The evidence showed that the defendant telephoned Kolb threatening him with bodily injury and, within minutes of the call, arrived at Kolb's office. The evidence showed that the defendant was wearing blue jeans and a black leather jacket when he was arrested at the Together Dating office, just a few hours before the assault. After the assault, Kolb identified the assailant as someone with reddish hair, wearing blue jeans, a black leather jacket, and a greenish cap. The police officer testified that this was what the defendant was wearing when he came to the police department the morning after his arrest for the assault. Additionally, the defendant gave the police two different explanations as to his whereabouts at the time Kolb was assaulted. Finally, when the police gave a description of the assailant to the defendant, he made an incriminating statement to the effect, "How could they tell what color hair I had . . . , I had on a hat?" The evidence was sufficient from which the court could find the defendant guilty beyond a reasonable doubt of assault in the third degree. Point denied.

In his next point, the defendant claims that the judgment entry erroneously shows him guilty of a class D felony of aggravated stalking. The defendant was charged with a violation of § 565.225.2, stalking, a class A misdemeanor. However, the judgment entry reflects a conviction for § 565.225.3, aggravated stalking, a class D felony.

There is a discrepancy in the record, but it is not apparent from the record whether it is a clerical error in recording the court's judgment, as suggested by the defendant, which may be corrected by a nunc pro tunc order without necessitating a resentencing. *State v. Owen*, 748 S.W.2d 893, 896 (Mo.App.1988). Section 565.225, which sets forth the crime of stalking, provides, in pertinent part:

2. Any person who purposely and repeatedly harasses or follows with the intent of harassing another person commits the crime of stalking.

3. Any person who purposely and repeatedly harasses or follows with the intent of harassing or harasses another per-

son, and makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury, commits the crime of aggravated stalking. The crime of aggravated stalking is a class D felony for the first offense. § 565.225.5.

■ *Massey v. State,* 608 S.W.2d 152, 153 (Mo.App.1980), states that a judgment is a judicial act, which derives its force from the rendition by the court and not by the ministerial act of the clerk in entering that judgment upon the record. The entry of the judgment here was a ministerial act, which would ordinarily be corrected by nunc pro tunc order. The error appears to be a clerical one, however, we cannot be absolutely certain that the sentencing was error free. Because of the obvious error in the written judgment entry, we are concerned that the error possibly originated at the actual sentencing.

■ We have not been provided with the record of the sentencing hearing, and the handwritten entry, presumably done by the court at the time of sentencing, is silent as to whether the sentence was for stalking or aggravated stalking, or whether it was for a felony or misdemeanor. The entry at the time of sentencing simply states that the defendant was sentenced on Count II to one year in the county jail, execution suspended and placed on probation for one year. This entry does not describe the crime or state, or whether the crime was a class D Felony or a class A misdemeanor. The State has not filed a brief with this court and, therefore, has not been of any assistance. The sentences refer only to the counts, and the stalking count changed from Count I in the original information to Count II in the amended information. Rather than remand for a nunc pro tunc order of the judgment entry, we will follow the more cautious course of action and remand for resentencing and correction of the written judgment entry.

This case is remanded to the trial court for resentencing and correction of the judgment entry reflecting the defendant's conviction on the count of stalking, a class A misdemeanor.

In all other respects, the conviction is affirmed.

LOWENSTEIN, P.J., and SPINDEN, J., concur.